UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
JAMES J. MCMAHON,                  )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 15-512 WES
                                   )
VERIZON NEW ENGLAND, INC.,         )
alias,                             )
                                   )
        Defendant.                 )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court are multiple motions: (1) Defendant Verizon New England, Inc., alias's ("Verizon") Motion for Summary Judgment ("Defendant's Motion") (ECF No. 12); (2) Plaintiff's Cross Motion for Partial Summary Judgment ("Plaintiff's Cross Motion") (ECF No. 17); (3) Plaintiff's Motion To Strike Certain of Defendant's Statement of Disputed Facts and the Declaration of James R. Fennell ("Plaintiff's Motion To Strike") (ECF No. 22); and (4) Defendant's Motion To Strike Portions of Plaintiff's Reply in Support of his Cross-Motion for Partial Summary Judgment ("Defendant's Motion To

Strike") (ECF No. 25).

I. Background

McMahon worked for Verizon as a splice service technician.[1] (Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 5.) The duties associated with this position generally include operating a hydraulic aerial lift or bucket truck, but McMahon, during his employ, only operated an ordinary work van. (Id. ¶ 6.)

On September 6, 2011, McMahon arrived at work for his shift at 7:30 a.m. (Id. ¶¶ 13-14.) By 7:45 a.m., he approached his supervisor for his work assignment. (Id. ¶ 15.) Based on their interaction, including the supervisor's perception of McMahon's speech, breath, and body language, the supervisor accused McMahon of being intoxicated and therefore unfit for duty. (Id. ¶¶ 16-17.) Another of McMahon's supervisors did not observe anything out of the ordinary about his behavior that day because, he noted, McMahon "always presented with a slight odor of alcohol." (Id. ¶ 19.) In any event, Verizon requested that McMahon submit to a blood alcohol test to set the record straight that he had not been drinking. (Id. ¶ 20.) McMahon refused, and as a result, Verizon

---

[1] As it must, the Court outlines the material facts in the light most favorable to the nonmovant, principally Plaintiff. Because the Court resolves this case as a matter of law on Defendant's motion, to the extent that material facts are disputed, the Court draws all reasonable inferences in favor of Plaintiff.

presumed McMahon intoxicated, and promptly suspended him. (Id. ¶¶ 23-24, 26.) Thereafter, McMahon was terminated on September 15, 2011, on the basis that he was intoxicated at work. (Id. ¶ 27.)

The entire time he worked for Verizon, McMahon was a member of and represented by the International Brotherhood of Electrical Workers Local 2323 ("Union"), and was subject to a Collective Bargaining Agreement ("CBA") between the Union and Verizon. (Def.'s Statement of Undisputed Facts ("DSUF") ¶ 2, ECF No. 14.)[2] The CBA's terms empowered the Union with the "right to grieve and arbitrate complaints over the interpretation and application of any provision of the CBA, including whether the discharge or discipline issued to a bargaining unit employee was for just cause." (Id. ¶ 15.)

The Union grieved McMahon's firing.[3] (PSUF ¶ 31.) While that grievance was pending, on July 9, 2012, McMahon, the Union, and Verizon, came to an agreement ("Settlement") that reinstated

---

[2] The Court cites to Defendant's Statement of Undisputed Facts only to the extent that Plaintiff does not dispute those facts. (See Pl.'s Statement of Disputed Facts ("PSUF"), ECF No. 16-1.)

[3] The Union's stance was that McMahon should have access to counseling and then the opportunity to return to work. (Def.'s Statement of Undisputed Facts ("DSUF") ¶ 16.) To that end, McMahon participated in a thirty-day in-patient-treatment program for drug and alcohol counseling and then an out-patient program. (Id.)

McMahon's employment. (Id. ¶ 32.) McMahon signed the agreement on his first day back to work, and the Union withdrew its grievance. (Id. ¶¶ 33-34.) The Settlement included a provision that subjected McMahon to three years of mandatory, random alcohol and drug tests as a continued-employment condition. (Id. ¶ 36.) Verizon put McMahon through four random drug and alcohol tests between July 16, 2012 (when he returned to work) and October 1, 2014 (his final drug test). (Id. ¶¶ 35, 37, 38.)

On October 1, 2014, Verizon requested that McMahon submit to a random drug and alcohol test. (Id. ¶ 38.) McMahon allegedly tested positive for marijuana and thus failed the test.[4] (Id. ¶ 39.) Again, McMahon was immediately suspended and thereafter terminated by letter on October 20, 2014. (Id. ¶¶ 40, 42.)

On November 9, 2015, McMahon filed his Complaint (ECF No. 1-1) in state court. Verizon timely removed the case to this Court, based on diversity jurisdiction, on December 4, 2015. The motions before the Court followed.

II. Legal Standard

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Matusevich v. Middlesex Mut. Assur.

---

[4] It is not disputed that Plaintiff "smoked marijuana from time to time for recreational purposes." (DSUF ¶ 20.)

4

Co., 782 F.3d 56, 59 (1st Cir. 2015) (quoting McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012)). "Where, as here, there are cross motions for summary judgment, [the Court] evaluate[s] each motion independently and determine[s] 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" Id. (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)). Further, in viewing each motion separately, the Court "draw[s] all inferences in favor of the nonmoving party." Cooper v. D'Amore, 881 F.3d 247, 249-50 (1st Cir. 2018) (quoting Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014)).

III. Discussion

McMahon asserts this one-count, state-law action against Verizon for an alleged violation of the Urine and Blood Tests as a Condition of Employment Act, R.I. Gen. Laws § 28-6.5-1 et seq. ("UBTCEA"). (Compl. ¶ 1.)

Out of the gate, McMahon encounters a statute-of-limitations problem. The Rhode Island Supreme Court has held that UBTCEA is subject to a three-year statute of limitations. Goddard v. APG Security-RI, LLC, 134 A.3d 173, 177 (R.I. 2016). Therefore, at first glance, it appears that McMahon's claim is barred because the termination occurred on October 5, 2011, but McMahon did not

file his Complaint in state court until November 9, 2015.[5] McMahon, however, avers that his claims fall under an exception to the three-year statute-of-limitations period for so-called continuing violations. (See, e.g., Pl.'s Mem. in Supp. Cross M. for Partial Summ. J. 18-19.) The Court disagrees.

As a preliminary matter, although the Rhode Island Supreme Court has cited with approval the application of the continuing-violation doctrine, see Croce v. State, Office of Adjutant Gen., 881 A.2d 75, 79-80 (R.I. 2005) (per curiam), it is unclear whether it would apply the doctrine in the context of UBTCEA. Assuming for the sake of argument that it would, the continuing-violation doctrine offers McMahon no refuge here because it "does not apply to 'discrete acts' . . . that occur on a 'particular day.' Instead, it applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim . . . ." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015) (quoting Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009)). Further, the Supreme Court has unambiguously categorized "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal

---

[5] The same conclusion is drawn with respect to the Settlement Agreement Plaintiff signed but now submits was illegal. Plaintiff signed the agreement on July 9, 2012, more than three years before he initiated this lawsuit.

to hire" as "separate actionable 'unlawful employment practice[s].'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). A plaintiff, like McMahon, challenging such specific acts "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." Id. "All prior discrete discriminatory acts are untimely filed and no longer actionable." Id. at 115.

Here, the discrete acts that McMahon challenges — his suspension on September 6, 2011, first termination on October 5, 2011, and the "Last Chance Agreement" he signed on July 9, 2012 — each occurred more than three years before he filed his Complaint on November 9, 2015. Those acts, therefore, are all barred by the applicable three-year statute of limitations.[6] See Goddard, 134 A.3d at 177. To proceed, then, McMahon must lodge a viable challenge to conduct that falls within the statute-of-limitations

---

[6] The Court questions whether UBTCEA applies to these circumstances. UBTCEA applies to "drug test[s]" for "controlled substance[s]." R.I. Gen. Laws § 28-6.5-1. Under Rhode Island law, the phrase "controlled substance" "means a drug, substance, immediate precursor, or synthetic drug in schedules I-V of this chapter. The term shall not include distilled spirits, wine, or malt beverages . . . ." R.I. Gen. Laws § 21-28-1.02 (emphasis added). It is further uncertain whether UBTCEA covers McMahon's circumstances because his initial termination was premised not on Verizon's administration of a drug test, but instead on McMahon's refusal to take a test. See R.I. Gen. Laws § 28-6.5-1. In any event, to dispose of these motions does not require the Court to answer these questions.

7

period.

Drawing all reasonable inferences in favor of McMahon in construing Verizon's summary-judgment motion, McMahon alleges several potentially actionable events not barred by the statute of limitations: (1) McMahon was required to submit to four "random drug and alcohol tests between July 16, 2012 and October 1, 2014"; and (2) his termination on October 20, 2014.

This, however, requires a generous reading of McMahon's complaint. It is actually not clear that McMahon has set forth specific allegations under his "UBTCEA" claim that relate to these discrete acts. (See Compl. ¶¶ 30-38.) Instead, McMahon attacks his "terminat[ion] based on his refusal to submit to an unlawful drug test, in violation of the UBTCEA," which could only refer to his first termination, which is time barred. (Compl. ¶ 37). To the extent that Plaintiff tries to amend his pleadings by way of his cross motion for summary judgment and opposition, this practice is not permitted. See, e.g., Foley v. Town of Lee, 871 F. Supp. 2d 39, 54-55 (D.N.H. 2012) ("But this theory is not intelligibly set forth in the amended complaint, so it cannot be raised for the first time in opposition to a summary judgment motion . . . ." (citing Calvi v. Knox Cty., 470 F.3d 422, 430-31 (1st Cir. 2006))). Nonetheless, even indulging Plaintiff and assuming for purposes of analysis that he properly pleaded his non-time-barred discrete

8

acts, they are nonetheless preempted by section 301 of the Labor Management Relations Act ("LMRA").

"Although the parties raised disputed facts . . . the question of § 301 preemption in this case is primarily a question of law." Haggins v. Verizon New England, Inc., 648 F.3d 50, 54 (1st Cir. 2011). "[T]he Supreme Court has deemed labor contracts within its scope 'creatures of federal law' and 'treats section 301 as a warrant both for removing to federal court state law claims preempted by section 301 and then dismissing them." Id. (quoting O'Donnell v. Boggs, 611 F.3d 50, 53 (1st Cir. 2010)). Further, section 301 preemption principles extend to claims "whose enforcement interferes with federal labor law and policy." O'Donnell, 611 F.3d at 54. "Such interference exists if the state-law claims 'require construing the collective-bargaining agreement.'" Haggins, 648 F.3d at 54 (quoting O'Donnell, 611 F.3d at 54). In the First Circuit, "§ 301 preempts a state-law claim when 'the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'" Id. at 54-55 (quoting Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997)). "A state-law claim . . . 'can depend on the meaning of a collective bargaining agreement' if either (1) 'it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a

9

collective bargaining agreement,' or (2) 'its resolution arguably hinges upon an interpretation of the collective bargaining agreement.'" Id. at 55 (quoting Flibotte, 131 F.3d at 26). Accordingly, whether section 301 has a preemptive effect requires consideration of both the CBA and UBTCEA's elements. See id.

Jackson v. Liquid Carbonic Corp., 863 F.2d 111 (1st Cir. 1988) is particularly instructive. There, the First Circuit considered whether section 301 of the LMRA, 29 U.S.C. § 185, preempted an employee's (Massachusetts) state-law, invasion-of-privacy claim premised on a challenge to his former employer's drug-testing program. Id. at 112. Jackson's facts are remarkably similar to the instant case. The plaintiff, Jackson, a union member, worked as a truckdriver for the defendant. Id. As a union member, Jackson was a party to a CBA. Id. And as a condition of continued employment, the defendant required that employees submit urine samples to be screened for, among other things, alcohol and narcotics. Id. The plaintiff's test revealed trace amounts of marijuana; this result led to his termination. Id. at 113. The relevant CBA in Jackson included both a "management rights" clause that gave the defendant "the right to post reasonable rules and regulations from time to time" and a "grievance and arbitration" clause, subjecting "all disputes 'involving the meaning, application, or interpretation of, or compliance with, the

10

provisions of [the CBA]'" to mandated grievance and arbitration procedures. Id. Rather than grieving under the CBA, the plaintiff challenged the drug policy in state and - once removed – federal court. Id.

The court found § 301 preemption; that is, it concluded that the plaintiff could not bring a state-law-privacy claim without the court necessarily construing the CBA. See id. at 114-15. First, the court deemed significant that Massachusetts had not outright prohibited drug testing; instead, "there [was] no barrier to a person's free and voluntary agreement to be tested." Id. at 115. Because "no absolute right to be free from drug testing" existed in Massachusetts, state law created no rights independent of the Agreement. Id. Nor did federal law provide the plaintiff with an absolute right to avoid employer-imposed drug testing. Id. The Jackson court framed the core issue as whether the balance of interests between the plaintiff and the defendant "necessarily implicate[d] the [collective bargaining] Agreement in some substantial sense." Id. at 117. And because it did, § 301 preempted the state-law cause of actions.

This case is Jackson redux. The Rhode Island Supreme Court has described "the nature of the right created by [UBTCEA as] analogous to an invasion of privacy . . . ." Goddard, 134 A.3d at 177. Further, Rhode Island, too, has not outright prohibited

11

employer-drug testing; rather, by way of UBTCEA, it has imposed a process to be followed by an employer when drug testing. See R.I. Gen. Laws § 28-6.5-1; Jackson, 863 F.2d at 115. This is important because, Rhode Island does not construct a "barrier to a person's free and voluntary agreement to be tested," which means its law creates no rights independent of the CBA.[7] Jackson, 863 F.2d at 115.

It is undisputed that McMahon, the Union, and Verizon reached an agreement pursuant to the CBA with respect to McMahon's 2011 termination. That is, the Union grieved McMahon's termination, and while the grievance was pending, the parties reached an agreement that reinstated McMahon's employment. (PSUF ¶¶ 31, 32.) The parties' Settlement required McMahon to submit to three years of mandatory, random alcohol and drug tests as a continued-employment condition. (Id. ¶¶ 36, 37.) The parties reached the Settlement by way of the CBA's "Grievance Procedure" clause, which set forth the procedure through which the Union could file a "complaint involving the interpretation or application of any of the provisions of [the CBA] or a complaint that an employee or

---

[7] Although, admittedly, whether UBTCEA is independent of the CBA for section 301 preemption purposes is closer here because UBTCEA outlines specific parameters for reasonable "Urine and Blood Tests as a Condition of Employment." R.I. Gen. Laws § 28-6.5-1. But the statute is not all-encompass.

12

group of employees for whom the Union is the bargaining agent has, in any manner, been unfairly treated." (DSUF, Ex. B 14.) "Then too, [a] drug and alcohol testing program, upon which all employees' continued employment depends, is a working condition whether or not it is specifically discussed in the [collective bargaining agreement]." Jackson, 863 F.2d at 120 (quotation marks omitted). "A working condition, of course, is a mandatory subject of bargaining and, when it presents a question upon 'which the parties disagree,' it 'must . . . come within the scope of the grievance and arbitration provisions of the collective agreement.'" Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 581 (1960)). Here, McMahon's "claimed right to privacy [under UBTCEA] is enmeshed in the collective bargaining pact." Id. at 117.

Because resolving McMahon's claim under UBTCEA "arguably hinges upon an interpretation of the collective bargaining agreement," Flibotte, 131 F.3d at 26, section 301 necessarily has a preemptive effect.

IV. Conclusion

Accordingly, the Court GRANTS Defendant Verizon's Motion for Summary Judgment (ECF No. 12) and DENIES Plaintiff's Cross Motion for Partial Summary Judgment (ECF No. 17). The Court DENIES as moot Plaintiff's Motion To Strike (ECF No. 22) and Defendant's

13

Motion To Strike (ECF No. 25).[8]

IT IS SO ORDERED.

/s/ *William E. Smith*
───────────────
William E. Smith
Chief Judge
Date: May 11, 2018

---

[8] Because the Court's analysis is not affected by both motions to strike, it does not endeavor to address them. See Wilson v. Port City Air, Inc., No. 13-CV-129-LM, 2014 WL 2480082, at *1 (D.N.H. June 3, 2014) (denying motion to strike because, among other things, "little of the challenged evidence actually figures into the court's resolution of the pending summary-judgment motion").